The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON STATE CONVENTION CENTER PUBLIC FACILITIES DISTRICT, a King County Public Facility District,<br><br>Plaintiff,<br>v.<br>EMPLOYERS INSURANCE COMPANY OF WAUSAU,<br><br>Defendant. | Civil Action No. 2:23-cv-1386-BJR<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## I. INTRODUCTION

Washington State Convention Center Public Facilities District ("Plaintiff") brings this action for declaratory judgment and breach of insurance contract against Defendant Employers Insurance Company of Wausau ("Defendant" or "Insurer"). Dkt. No. 1, Ex. 2 ("Comp."). The matter was filed in Washington State Superior Court, King County, on August 2, 2023, Defendant removed the case to the United States District Court for the Western District of Washington on September 7, 2023, and the matter was reassigned to the undersigned on January 31, 2024. Dkt. No. 1. Currently before the Court is Defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which Plaintiff opposes. Dkt. Nos. 13 & 17. Having

reviewed the motion, the opposition and reply thereto, the record of the case, and the relevant legal authority, the Court will grant the motion. The reasoning for the Court's decision follows.

## II.   BACKGROUND

### A.   The Insurance Policy

Plaintiff operates the Washington State Convention Center ("the Convention Center" or "the Center") located at 705 Pike Street in downtown Seattle, Washington. For a premium of $245,163.00, Defendant agreed to provide insurance coverage to Plaintiff as set forth in Policy No. YAC-L9L-469843-019 with a coverage period of November 30, 2019 to November 30, 2020 ("the Policy"). Comp. ¶¶ 8-9. The Policy "cover[s] property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy." *Id.* at Ex. A, p. 5. The Policy defines "covered property" as "**Real Property**" and "**Personal Property**" "located at or within one-thousand (1,000) feet of a covered **location**, unless otherwise excluded[.]" *Id.* at p. 17 (capitalization and bold in original).[1] The Policy also provides "Time Element coverage"—coverage for losses resulting from the inability to put the covered property to use due to physical damage. Here, the Time Element provision provides coverage for "actual loss sustained … resulting from loss or damage of the type insured by this Policy" during "the time such physical loss or damage happens" and ends when the property is "Repaired or replaced; and [] Made ready for operations." *Id.* at 38 (capitalization in original).[2] Of particular importance to the instant lawsuit, the Time Element provision provides

---

[1] The Policy states that the "covered locations" are "Listed on a SCHEDULE on file with [**the insurer**]" and "Listed on the SCHEDULE attached to this Policy", neither of which are provided to the Court. *Id.* at p. 7 (capitalization and bold in original). However, the parties do not dispute what constitutes the covered location under the Policy: the Convention Center.

[2] Defendant misquotes this section of the Policy in its motion, inserting the word "directly" before the phrase "resulting from a loss" and deleting the word "damage" before the phrase "of the type insured by this Policy." Dkt. No. 13 at 5.

2

coverage for "actual loss sustained … during the *period of interruption* if an order of civil or military authority prohibits access to a covered **location** provided that such order is caused by physical loss or damage of the type insured by this Policy at a covered **location** or [within 5 statute miles]." *Id*. at 38-39 (italics and bold in original). The parties refer to this as "the Civil or Military Order provision".

Lastly, the Policy contains an exclusion clause that the parties refer to as the "Contamination Exclusion". This provision excludes coverage for "**Contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided elsewhere in this Policy" unless the contamination "directly result[s] from a **covered loss**[.]" *Id*. at p. 21 (bold in original). "**Contamination**" is defined as "[a]ny condition of property that results from a **contaminant**." *Id*. at p. 58 (bold in original). And "**Contaminant**" is defined as "[a]ny foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew." *Id*.[3]

**B.    The Claim**

Plaintiff alleges that by "the end of March 2020, the COVID-19 virus was present at and within the [] Convention Center" causing "direct physical damage to the [] Center by contaminating the physical property (*e.g*., surfaces)." Comp. at ¶¶ 21-22. Plaintiff further alleges that the "presence of COVID-19 in the air and on the surfaces of the [] Convention Center" impaired "the functionality of the property", "render[ed] it unfit for its intended purposes", and made it "uninhabitable." *Id*. at ¶¶ 19, 20 and 23. Plaintiff also asserts that in 2020, Washington

---

[3]Defendant also asserts that Plaintiff's loss is barred under "the Loss of Market Exclusion", which Defendant claims excludes coverage for "[l]oss of market or loss of use". *Id*. at p. 18.

State Governor Jay Inslee issued several proclamations that "prohibited access to the [] Convention Center due to COVID-19" and that as a result of "the presence of COVID-19" and the Governor's proclamations "prohibiting access to the [] Convention Center", Plaintiff had to cease operations and "incurred significant actual loss (including, without limitation, lost business income)." *Id*. at ¶¶ 25-26.

Plaintiff tendered a claim for coverage to Defendant, which Defendant denied, and this lawsuit followed. Although Plaintiff's complaint does not identify which Policy provisions Plaintiff contends entitle it to relief, Plaintiff's opposition to Defendant's motion to dismiss clarifies that it seeks coverage pursuant to the Civil or Military Authority provision in the Policy. *See* Dkt. No. 17 at 6.

### III.   STANDARD OF REVIEW

To survive a 12(b)(6) motion, a plaintiff needs only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept as true the complaint's factual allegations and construe the allegations in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court must dismiss under Rule 12(b)(6) where, under the applicable law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Moreover, mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Legal conclusions are insufficient and must be supported by factual allegations, *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017), and "conclusory allegations of law and unwarranted inferences are insufficient to avoid Rule 12(b0(6) dismissal,"

*Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)).

While a court generally does not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, there are certain exceptions. Relevant to the instant motion, a court may consider documents appended to the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). In this case, the Policy has been appended to the complaint, which the Court therefore considers in the context of this motion.

### IV.   DISCUSSION

#### A.   Rules Governing Insurance Contract Interpretation

Federal Courts sitting pursuant to diversity jurisdiction, as here, apply state substantive law, including the state substantive law regarding insurance policy interpretation. *See Indian Harbor Ins. Co. v. City of Tacoma Dep't of Pub. Utilities*, 354 F. Supp. 3d 1204, 1212 (W.D. Wash. 2018). Under Washington law, "[c]onstruction of an insurance policy is a question of law for the courts, the policy is construed as a whole, and the policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 352 P.3d 790, 792 (Wash. 2015) (quoting *Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 882 P.2d 703, 712 (Wash. 1994)). Further, "[i]n construing the language of an insurance policy, the entire contract must be construed together so as to give force and effect to each clause." *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990). Undefined terms within a policy are to be given their "plain, ordinary, and popular meaning." *Xia v. ProBuilders Specialty Ins. Co.*, 400 P.3d 1234, 1240 (Wash. 2017) (quoting *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 881 P.2d 201, 207 (Wash. 1994)). In determining this meaning, the court

may reference standard English language dictionaries. *Kut Suen Lui v. Essex Ins. Co.*, 375 P.3d 596, 601 (Wash. 2016).

If an undefined term is ambiguous, it "must be construed against the insurer and in favor of the insured." *Holden v. Farmers Ins. Co. of Wash.*, 239 P.3d 344, 347 (Wash. 2010). A term is considered ambiguous where "it is susceptible to more than one reasonable interpretation." *Id.* Where, however, the language of a policy is clear and unambiguous, the court "must enforce the policy as it is written and may not modify the policy or create ambiguity where none exists." *Mass. Bay Ins. Co. v. Walflor Indus., Inc.*, 383 F. Supp. 3d 1148, 1157 (W.D. Wash. 2019) (citing *Pub. Util. Dist. No. 1 of Klickitat Cnty. v. Int'l Ins. Co.*, 881 P.2d 1020, 1025 (Wash. 1994)).

**B.  Analysis**

Determining whether insurance coverage exists is a two-step process. *See Overton v. Consol. Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002). First Plaintiff must demonstrate that its loss is within the scope of the Policy's insured losses. If Plaintiff meets this burden, then, second, Defendant can avoid liability by showing that the loss is excluded by specific Policy language. *Id.*

**1.  Whether Plaintiff's alleged losses are within the scope of the insured losses**

As stated above, Plaintiff alleges that due to "the presence of COVID-19" and Governor Inslee's proclamations "prohibiting access" to the Convention Center, it "was required to cease operations [] and, as a result, incurred significant actual loss (including without limitation, lost business income)." Comp. at ¶ 26. Plaintiff asserts that these losses are covered by the Civil or Military Authority provision in the Policy. Dkt. No. 17 at 6. According to Plaintiff, in order to establish coverage under this provision, it must allege: (1) that it sustained actual loss during the period of interruption, (2) that Governor Inslee's proclamations prohibited access to the Convention Center, and (3) that the proclamations were caused by physical loss or damage of the

6

type insured by the Policy at the Convention Center or within 5 statute miles of the Center. Plaintiff asserts that its complaint contains sufficient factual allegations, accepted as true, to satisfy the foregoing and, as such, Defendant's motion must be denied.

Defendant does not dispute the first required element—that Plaintiff sustained actual losses during the relevant time-period. However, Defendant disputes that Plaintiff can satisfy the remaining two elements—(a) that the Governor's proclamations prohibited access to the Convention Center and (b) that the proclamations were caused by physical loss or damage at the Center or within 5 statute miles of it.

a. Whether the Governor's proclamations prohibited access to the Convention Center

The Civil or Military Authority provision in the Policy provides coverage for losses sustained if "an order of civil or military authority *prohibits access to a covered* **location**…[.]" Comp., Ex. A at p. 38 (bold in original, italics added). Plaintiff cites Governor Inslee's Proclamations 20-05, 20-07, 20-13, and 20-25 in support of its claim that an order of civil authority prohibited access to the Convention Center. Plaintiff's argument with respect to Proclamations 20-05 and 20-07 is easily dismissed as there can be no dispute that these two proclamations did not prohibit access to any property, let alone the Convention Center. Proclamation 20-05 "proclaim[ed] that a State of Emergency exists in all counties in the state of Washington," and ordered the Washington State National and State Guard into "active status." Dkt. No. 14, Ex. C. It did not restrict access to any property. Proclamation 20-07 prohibited "[g]atherings of 250 people or more for social, spiritual and recreational activities including, but not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities." *Id*. at Ex. D. While Proclamation 20-07 prohibited large gatherings, it did not prohibit access to any property.

Turning to the remaining two proclamations, Proclamation 20-13 prohibited the "onsite consumption of food and/or beverages" and "sit-down food or beverage services" within "a public venue". *Id*. at Ex. E. The proclamation further prohibited the "operation of public venues in which people congregate for entertainment, [and] social or recreational purposes." *Id*. Proclamation 20-25 required that "**[a]ll people in Washington State shall immediately cease leaving their home or place of residence except: (1) to conduct or participate in essential activities, and/or (2) for employment in essential business services**." *Id*. at Ex. F at 4 (bold in original). The proclamation further prohibited public and private gatherings, whether for social, spiritual, and recreational purposes, and regardless of the number of participants. *Id*. at 5. However, the proclamation specifically allowed "**non-essential businesses in Washington State**" to continue to "**perform[] basic minimum operations**." *Id*. (bold in original). Plaintiff argues that because these proclamations prohibited it from conducting business at the Convention Center, it was prohibited access to the property.

The Policy does not define the term "access"; therefore, the Court turns to its common definition. *Kut Suen Lui*, 375 P.3d at 601. The term "access" as it is used in the Civil or Military Authority provision is a noun and is defined as "permission, liberty, or ability to enter, approach, or pass to and from a place." *Access*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary (last visited February 13, 2024). With this definition in mind, Proclamations 20-13 and 20-25 did not prevent Plaintiff from accessing the Convention Center as Plaintiff was at liberty to "enter, approach, or pass" through the Center; indeed, Proclamation 20-25 specifically allowed Plaintiff to continue to perform "basic minimum operations" at the Center. *See Hill and Stout, PLLC v. Mutual of Enumclaw Insurance Company*, 515 P.3d 525, 532 (Wash. 2022) (holding "that the claim for loss of intended use and loss of business income [as a

result of Governor Inslee's proclamations] is not a *physical* loss of property" because plaintiff "was still able to *physically* use the property at issue") (italics in original). However, the Policy is ambiguous as to whom and to what extent access to the Convention Center must be denied to trigger coverage under the Civil or Military Authority provision. While access to the Convention Center was still available to Plaintiff, Proclamation 20-25 undoubtedly prohibited the public from accessing the Center (because the proclamation barred Washingtonians from leaving their homes for non-essential activities or business). Given this lack of clarity, the provision must be construed against the insurer and in favor of the insured. *Holden*, 239 P.3d at 347 ("Any [] ambiguity must be construed against the insurer and in favor of the insured."). Thus, the Court concludes that Proclamation 20-25 sufficiently barred access to the Convention Center to satisfy the "prohibits access" prong of the Civil or Military Authority provision in the Policy.

     **b.**  **Whether the proclamations were caused by physical loss or damage to the Convention Center**

In addition to requiring that a civil or military order actually "*prohibit[] access to a covered location*", the Civil or Military Authority provision also requires that the order be "*caused by physical loss or damage* of the type insured by this Policy at a covered **location** or within [5 statute mile of a covered location]." Comp. Ex. 2 at 38-39 (bold in original, italics added). Defendant argues that Plaintiff's claim must be dismissed because the Governor's proclamations were not "caused by physical loss or damage" at the Convention Center or within 5 miles of it. Defendant's argument finds support in several recent Ninth Circuit decisions that held that civil or military authority provisions similar to the instant provision did not provide coverage because Governor Inslee's proclamations were issued due to concern for public health and safety, not in response to a dangerous physical condition at a covered location. *See e.g. Hot Yoga, Inc. v. Philadelphia Indemnity Ins. Co.*, 2022 WL 9732180, *1 (9th Cir. Oct. 17, 2022) (concluding that

plaintiff's argument that "it may recoup its losses under [the civil authority] provision … fail[ed] because the complaint include[d] no colorable allegation that the Governor entered his orders in response to any dangerous *physical* conditions that resulted from property damage rather than because of concern for public health and safety.") (emphasis in original); *Shokofeh Tabaraie DDS v. Aspen American Ins. Co.*, 2022 WL 11689678, *1 (9th Cir. Oct. 20, 2022 (same); *Caballero v. Mass. Bay. Ins. Co.*, 2022 WL 9730836, *1 (9th Cir. Oct. 17, 2022) (same); *Kara McCulloch, DMD, MSD, PLLC v. Valley Forge Ins. Co.*, 2022 WL 9730777, *1 (9th Cir. Oct. 17, 2022) (same).

Plaintiff attempts to circumvent these decisions by arguing that the presence of the COVID-19 virus at the Convention Center created a dangerous physical condition, and it is because of this physical condition that Governor Inslee issued the proclamations.[4] As this Court has already stated in at least two prior decisions interpreting insurance law in the context of the COVID-19 pandemic, the COVID-19 virus does not cause physical loss or damage to property. *Nguyen v. Travelers Cas. Ins. Co. of Am.*, 541 F. Supp. 3d 1200, 1216, 1218 (W.D. Wash. 2021), *reconsideration denied sub nom. Vita Coffee LLC v. Fireman's Fund Ins. Co.*, 2021 WL 3077922 (W.D. Wash. July 21, 2021) and *appeal dismissed sub nom. Vancouver Clinic Ins., PS v. Affiliated FM Ins. Co.*, 2012 WL 6201784 (9th Cir. Dec. 1, 2021); *First & Stewart Hotel Owner, LLC v. Fireman's Fund Ins. Co.*, 2021 WL 3109724, *4, (W.D. Wash. July 22, 2021), *aff'd*, 2023

---

[4] None of the proclamations describes any loss or damage to any property within Washington, let alone loss or damage to the Convention Center or within five statute miles of it. The proclamations themselves make clear that they were issued in response to a disease, not loss or damage. *See, e.g.*, Dkt. No. 14, Ex. E "Proclamation 20-13" (the purpose of the proclamation is to "curtail the spread of the COVID-19 pandemic in Washington State"); Ex. F "Proclamation 20-25" (imposing a stay-at-home order because COVID-19 is "a virus that spreads easily from person to person"). Indeed, Plaintiff admits that the proclamations "were issued because of a communicable disease." Dkt. No. 17 at 17.

10

WL 3562997 (9th Cir. May 19, 2023) (holding that COVID-19 does not cause direct physical damage to property). In reaching this conclusion, this Court noted that it "joins the numerous courts across the country" that have concluded that "COVID-19 hurts people, not property." *Nguyen*, 541 F. Supp. 3d at 1216 (quoting *Johnson v. Hartford Fin. Servs. Grp., Inc.*, 510 F. Supp. 3d 1326, 1337 (N.D. Ga. Jan. 4, 2021). And since issuing the *Nguyen* and *First & Stewart Hotel Owner* decisions, at least two Washington courts have likewise concluded that the presence of COVID-19 does not cause physical damage to property. *See Spire Hospitality, LLC v. Everest Indem. Ins. Co.*, No. 21-2-11932-4 SEA, slip op. at 8 (Wash. Super. Ct. July 20, 2023) (holding that plaintiff failed to state "a cognizable claim for 'direct physical loss of or damage to property' caused by the presence of COVID-19 on their premises"); *Kemper Holdings, LLC v. Am. Int'l Grp. UK Ltd.*, 2021 WL 5883238, *1 (Wash Super. Ct. Dec. 13, 2021) ("[T]his Court holds that the SARS-CoV-2 virus and the communicable disease COVID-19 did not cause physical loss of or damage to property.").

Plaintiff disregards the foregoing cases and instead points this Court to *Board of Regents of the University of Washington v. Employers Insurance Company of Wausau*, No. 22-2-15472-1 SEA, a case filed in King County Superior Court in support of its claim that the COVID-19 virus causes damage to property. Dkt. No. 19, Ex. A. In that case, the University of Washington ("UW") tendered a claim for its COVID-19-related losses to its insurance company, claiming that coverage existed under a communicable disease endorsement in the governing insurance policy. The insurer denied coverage and UW filed suit. The insurer moved to dismiss UW's lawsuit, arguing among other things, that COVID-19 did not cause direct damage to property. However, in its complaint, UW had alleged "detailed allegations" describing how the SARS-CoV-virus can physically effect and transform both indoor environments and physical surfaces and had

supported those allegations with "extensive quotations and other references to existing scientific data and related studies." *Id*. at 6. Accordingly, considering the extensive allegations that were supported by scientific studies and reports, Judge Whedbee concluded that UW's "detailed allegations about the SARS-CoV-2 virus' effect on the physical aspects of UW's property and citations to supporting scientific data, [are] sufficient to withstand the Insurer's motion to dismiss at the pleading stage." *Id*. at 6.

The same conclusion is not warranted in this case. First, the foregoing decision is not binding on this Court. *Bauman v. Turpen*, 160 P.3d 1050, 1055 (Wn. App. 2007) ("The findings of fact and conclusions of law of a superior court are not legal authority and have not precedential value."). Second, Plaintiff's complaint does not contain "detailed factual allegations" supported by "extensive quotations" and "references to existing scientific data" that allege that the COVID-19 virus causes physical damage to property. At best, the complaint contains sparse, conclusionary allegations regarding the same. It is black-letter law that such bare-bone allegations will not survive a motion to dismiss. *Sprewell*, 266 F.3d at 988 (the court need not accept as true merely conclusory allegations).

Lastly, Plaintiff relies on the Washington Supreme Court's decision in *Hill and Stout* to argue that the Governor's proclamations caused it to experience a total "loss of functionality". According to Plaintiff, the *Hill and Stout* Court indicated that such a loss can satisfy the "direct physical loss or damage" to property requirement. In *Hill and Stout*, a dental office tendered a claim to its insurer for lost income suffered due to "direct physical loss of or damage to" its property when it curtailed its non-emergency operations because of Governor Inslee's proclamations (the office remained open for dental emergencies). 515 P.3d 525 (Wash. 2022). The insurer denied the claim, the insured filed suit, and a unanimous Supreme Court sided with

the insurer, holding that "'physical loss of … property' is a property that has been physically destroyed or that one is deprived of in that the property is no longer physically in their possession." *Id*. at 532. Thus, the Court concluded that the dental office's "claim for loss of intended use and loss of business income" did not constitute "a *physical* loss of property" because the dental office "was still able to *physically* use the property at issue." *Id*. (italics in original) (noting that the "property was in [the plaintiff's] possession, … still functional and able to be used, and [the plaintiff] was not prevented from entering the property").

However, the Washington Supreme Court went on to state in *dicta* that "there are likely cases in which there is no physical *alteration* to the property but there is direct physical loss under a theory of loss of functionality." *Id.* at 533 (italics in original). The Court stated that if something "*physically* prevented use of the property or rendered it useless"—such as "imminent danger to the property" or "contamination with a problematic substance"—then there may be direct physical loss under a theory of loss of functionality. *Id*. (italics in original). Plaintiff relies on this language to argue that the combination of the presence of the COVID-19 virus at the Convention Center and the Governor's proclamations caused it to lose complete functionality of the Center and, as such, it is entitled to coverage.  Plaintiff is mistaken. A loss of functionality claim does not exist simply because Plaintiff could not conduct its normal course of business at the Convention Center; rather, the Washington Supreme Court made clear that the loss of functionality must be due to some *physical* effect on the property. *Id*. at 534 ("[w]hile there may be some flexibility to a physical alternation requirement under a loss of functionality test, even under a loss of functionality test there must be some *physical* effect on the property[.]") (italics in original). Here, nothing "*physically* prevented use of the property or rendered it useless", indeed as stated above, Plaintiff had access to the Convention Center throughout the relevant time-period. Thus, as the

13

Washington Supreme Court has already stated, "the loss of use due to [Governor Inslee's] Proclamations did not trigger coverage." *Id*. at 535.

For the foregoing reasons, the Court concludes that Plaintiff is not entitled to coverage under the Civil and Military Authority provision in the Policy.

**2.      Whether the Policy Excludes Plaintiff's Alleged Losses**

Defendant argues that even if Plaintiff could show that the presence of the COVID-19 virus at the Convention Center and the Governor's proclamations constituted direct physical loss or damage for purposes of insurance coverage, the Policy's Contamination Exclusion bars coverage. The Contamination Exclusion provides:

> **We** do not cover the following unless directly resulting from a covered loss:
>
> > a. **Contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy except as provided elsewhere in this Policy.

Dkt. No. 1, Ex. 2 at 21 (bold in original). The Policy defines "contamination" as "[a]ny condition of property that results from a **contaminant**" and defines "contaminant" as "[a]ny foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or milder." *Id*. at 58 (bold in original).

In other words, the Contamination Exclusion precludes coverage for any business income losses caused by the inability to use the covered property due to the presence of a "virus" or "disease causing or illness causing agent". This, of course, is exactly what Plaintiff alleges here— that it suffered business losses because it could not use the Convention Center due to the presence of the COVID-19 virus at the Center. Thus, the Contamination Exclusion unambiguously bars coverage of Plaintiff's claim. *See, e.g. AECOM v. Zurich Am. Ins. Co.*, 2023 WL 1281675, *1

(9th Cir. Jan. 31, 2023) ("[Plaintiff's] theory of recovery rests dispositively on the presence of Covid virus particles at its various insured properties and the contention that such presence constitutes direct physical loss or damage to property. Accordingly, the very thing that [plaintiff] claims triggers coverage—the 'presence' of a 'virus' and the resulting 'condition of property' due to that presence—constitutes 'Contamination' under the plain language of the Contamination exclusion. Thus, under the theory of [plaintiff's] own complaint, the Contamination exclusion bars the coverage [plaintiff] alleges."); *Out W. Rest. Grp., Inc. v. Affiliated FM Ins. Co.*, 2022 WL 4007998, *2 (9th Cir. Sept. 2, 2022) (holding that a contamination exclusion provision bars coverage for losses allegedly caused by the presence of the COVID-19 virus); *HT-Seattle Owner LLC v. Am. Guar. & Liab. Ins. Co.*, 2023 WL 3562996, *1 (9th Cir. May 19, 2023) (holding that contamination exclusion clause prohibited coverage for business losses cause by the COVID-19 pandemic).

        Plaintiff attempts to avoid this outcome by arguing that the Contamination Exclusion does not apply because it does not specifically exclude "communicable disease" and the Governor's proclamations were "issued because of a communicable disease." Dkt. No. 17 at 17. However, the "communicable disease" that triggered the Governor's proclamation—SARS-CoV-2—is caused by the COVID-19 *virus*, and viruses are specifically addressed in the Contamination Exclusion. For this reason, the Court rejects Plaintiff's attempt to distinguish SAR-CoV-2 from the COVID-19 virus. *See*, *e.g.*, *Ascent Hospitality Management Co. v. Employers Ins. Co. of Wausau*, 537 F. Supp. 3d 1282, 1289 (N.D. AL. 2021) (rejecting plaintiff's attempt to distinguish the pandemic from COVID-19 for purposes of a contamination exclusion clause).

## V. CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Defendant's motion to dismiss with prejudice.[5]

Dated this 27th day of February 2024.

Barbara Jacobs Rothstein
U.S. District Court Judge

---

[5] Defendant asks the Court to dismiss the complaint with prejudice, arguing that an amendment to the complaint would be futile. Plaintiff does not respond to this argument nor does it request leave to amend. The Court agrees that dismissal with prejudice is warranted in this case. While Federal Rule of Civil Procedure 15 requires that leave to amend be freely given, it is not required when granting such leave would be futile. Here, even if Plaintiff were to amend its complaint to include allegations similar to those alleged in *Board of Regents of the University of Washington v. Employers Insurance Company of Wausau*, Plaintiff's claim for coverage would still be barred by the Contamination Exclusion in the Policy, thus any amendment is futile.